**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Kia Griffin-Thomas, ) | |
| ) | |
| Plaintiff, ) | Case No. |
| ) | |
| v. ) | |
| ) | |
| La Rabida Children's Hospital, ) | |
| ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT**

NOW COMES Plaintiff, Kia Griffin-Thomas, by and through her attorneys, and alleges the following against Defendant, La Rabida Children's Hospital:

**Jurisdiction, Venue & Parties**

1. This case arises under the Family and Medical Leave Act of 1993 (the "FMLA") and the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008 (generally referred to as the "ADA").

2. This Court has subject matter jurisdiction to hear this case under 28 U.S.C. § 1331 (federal question jurisdiction).

3. Venue is appropriate here because the events giving rise to this litigation occurred in this District, namely in Chicago, Illinois.

4. Defendant, La Rabida Children's Hospital ("La Rabida"), is an Illinois not-for-profit corporation located in Chicago, Illinois.

5. La Rabida is a pediatric specialty hospital.

6. Plaintiff, Kia Griffin-Thomas, is a former employee of La Rabida.

7. Griffin-Thomas was employed with La Rabida from September 16, 2013 to May 12, 2020.

**Facts**

8. In mid-April 2020, Griffin-Thomas reported to her employer that she was experiencing fever and body aches.

9. On April 22, 2020, Griffin-Thomas reported to La Rabida's Risk Management Department assistant (who was also a Registered Nurse) that she had symptoms including fever, body aches, lower back pain, shoulder pain, thigh pain, nausea, sore throat, cough, and tightness in the chest.

10. On April 22, 2020, that Risk Management assistant/RN told her to stay away from work until she was symptom-free for three days.

11. On April 23, 2020, Griffin-Thomas reported to La Rabida's Risk Manager and the director of her department that her doctor believed she (and her children) had COVID-19.

12. On April 23, 2020, Griffin-Thomas applied for FMLA[1].

13. On April 27, 2020, Griffin-Thomas told her employer she had applied for FMLA.

14. On May 5, 2020, despite the fact that Griffin-Thomas had applied for FMLA (and had not yet been approved or denied), Employment Manager Tim Meline called Griffin-Thomas multiple times. He then emailed her, "per my voicemail…please provide an update."

15. Griffin-Thomas responded to HR's Meline less than an hour later with an email that included "…I still have a sore throat, I don't feel my best and my youngest hasn't fully recuperated."

16. A few hours later, still on May 5, 2020, Griffin-Thomas wrote to Meline, *inter alia,* "FMLA has received documentation from my physician…I can not return to work unwell… I suppose FMLA will produce a decision soon. If the time I need to fully recuperate from this horrible virus is unconducive to La Rabida's expectations or personal timeline I can submit a formal resignation letter."

17. On May 11, 2020, the Director of Human Resources, Frances Lefkow, emailed Griffin-Thomas and demanded that Griffin-Thomas call her.

---

[1] through a company that La Rabida contracted with, called "FMLA Source"

2

18. On May 11, 2020, Griffin-Thomas emailed Lefkow: "my throat is raw and has been for three weeks since catching the coronavirus, my chest is still tight and I have asthma which has flared. I am physically unable to return to work…"

19. Griffin-Thomas emailed Meline a few minutes later, on May 11, 2020, "I am physically unable to have a conversation with anyone including my immediate family. My throat is raw, my asthma has flared, my chest is still tight. That is the update on my health status. I reply to everyone via text or email. That's the absolute best I can do at this time. No, I will not be physically able to return on 5/12."

20. On May 12, 2020, Lefkow wrote to Griffin-Thomas, "in your email to Tim, you announced that you would be happy to submit a letter of resignation and I want to inform you that we accept it. Your last day of being active on our payroll will be 5/11/2020." She was instructed to pick up her personal belongings and return La Rabida property and was told that her access would be removed from all of La Rabida's systems.

**Count 1: FMLA**

21. Plaintiff re-alleges paragraph 1-20 as if re-printed here.

22. La Rabida is an employer covered by the FMLA, because it has 50 (plus) employees, and it is engaged in commerce or in an industry or activity affecting commerce.

23. As of April 23, 2020 (the date she applied for FMLA leave), Griffin-Thomas was an eligible employee under the FMLA because she had worked 1,250 (plus) hours during the prior 12 months, worked at a location with 50 or more employees, and had worked for La Rabida for 12 months.

24. It is unlawful for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided by the FMLA.

25. It is unlawful for an employer to discriminate or retaliate against an employee for having attempted to exercise any FMLA right.

26. La Rabida violated Griffin-Thomas' rights under the FMLA by
   a) terminating her while she was unable to work because of a serious health condition for which she had applied for FMLA leave (and well before 12 weeks had expired); and

3

      b) terminating her after she had requested approval for FMLA leave but before such leave had been approved or denied.

27. La Rabida terminated her in order to avoid having to provide her with FMLA leave and in retaliation for her request.

28. Griffin-Thomas needed leave for "a serious health condition"—suspected COVID-19 (with symptoms including throat infection, ear infection, chest inflammation, and underlying asthma), which required continuing treatment by healthcare providers.

29. As a result of La Rabida's violations of the FMLA, Griffin-Thomas was harmed: she has lost wages and benefits.

30. Griffin-Thomas has hired an attorney to assist her with remedying the violations of her rights.

WHEREFORE, Plaintiff, Kia Griffin-Thomas, requests that Defendant, La Rabida Children's Hospital, be found liable for violating the FMLA and that she be awarded all damages to which she is entitled including but not limited to: 1) all wages, salary, employment benefits, or other compensation denied or lost by reason of the violations; 2) interest on the damages listed in #1; 3) liquidated damages equal to 1 and 2 combined; 4) a reasonable attorney's fee; 5) reasonable expert witness fees; and 6) other costs of this action.

### Count 2: ADA

31. Plaintiff re-alleges paragraphs 1-20 as if re-printed here.

32. At all relevant times, Griffin-Thomas was a person with a disability: she had the impairments of asthma and Covid-19 infection, which substantially limited her ability to speak, swallow and breathe.

33. She was "qualified": she could do the essential functions of her position, with accommodation.

34. Beginning in mid-April 2020, Griffin-Thomas sought reasonable accommodation in the form of a short amount of time off work.

35. On May 12, 2020, Lefkow fired her, without engaging in any interactive process.

36. La Rabida violated the ADA by denying her reasonable accommodation and terminating her because she was disabled.

37. As a result of LaRabida's violations of the ADA, Griffin-Thomas was harmed, financially and emotionally.

38. Punitive damages are necessary to punish La Rabida for its violations of federal law.

39. Punitive damages are necessary to deter La Rabida and similar employers from committing similar violations of federal law.

40. Griffin-Thomas exhausted her administrative remedies: she filed an EEOC charge on July 29, 2020; she received a right-to-sue letter on or around January 30, 2021; and she is filing this lawsuit within 90 days thereof.

WHEREFORE Plaintiff, Kia Griffin-Thomas, requests that Defendant, La Rabida, be found liable for violating the ADA, and that she be awarded all damages to which she is entitled, including but not limited to actual damages (including for emotional distress); backpay; front pay; fringe benefits, prejudgment interest; attorney's fees; expert witness fees; costs; and any other relief required to make Plaintiff whole, including compensation for lost earning power.

### Count 3: IHRA

41. Plaintiff re-alleges Count 2 here.

42. Defendant's conduct also violates the IHRA.

43. Plaintiff exhausted her administrative remedies under the IHRA: her EEOC charge was cross-filed at the Illinois Department of Human Rights; she sent the EEOC's right-to-sue letter to the IDHR; she received dismissal on or around March 7, 2021; and she is filing this lawsuit within 90 days thereof.

WHEREFORE Plaintiff, Kia Griffin-Thomas, requests that Defendant, La Rabida, be found liable for violating the IHRA, and that she be awarded all damages to which she is entitled, including but not limited to actual damages (including for emotional distress); backpay; front pay; fringe benefits, prejudgment interest; attorney's fees; expert witness fees; costs; and any other relief required to make Plaintiff whole, including compensation for lost earning power.

### Count 4: Illinois Whistleblower Act

44. Plaintiff realleges paragraphs 1-20 as if re-printed here.

45. Under the Illinois Whistleblower Act, Section 20 ("Retaliation for certain refusals prohibited"), an employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation.

46. As of May 12, 2020, the City of Chicago's Commissioner of Public Health had signed the following Order:

> "Any resident of the City of Chicago having COVID-19 illness shall shelter in their place of residence. No person having COVID-19 illness shall go to their workplace or congregate setting in the City of Chicago…
>
> In addition to any other penalty provided by law, any person who violates this Order shall be subject to the fines set forth in Section 2-112-340 of the Municipal Code.
>
> 'COVID-19 Illness' means demonstrating symptoms of acute respiratory disease, including, but not limited to, new onset of fever, cough, shortness of breath, congestion in the nasal sinuses or lungs, sore throat, body aches, or unusual fatigue. A person is considered to have COVID-19 illness until such person is free of fever (100.4° F (38.0° C) or greater using an oral thermometer), and any of the other symptoms described herein, for at least 72 hours, without the use of fever-reducing or other symptom-altering medicines (e.g. cough suppressants)."

Allison Arwady, MD, *Order of the Commissioner of Health of the City of Chicago No. 2020-1 (Shelter in Place for COVID-19 Illness)* (Issued and Effective March 18, 2020), https://www.chicago.gov/content/dam/city/depts/cdph/HealthProtectionandResponse/Order%20re%20Shelter%20in%20Place%20FINAL.pdf (last viewed Apr. 12, 2021).

47. Griffin-Thomas told LaRabida she would not come into work with symptoms of acute respiratory disease.

48. LaRabida fired her for refusing to come into work (a children's hospital, no less) while sick with symptoms of acute respiratory disease.

49. This violates the Illinois Whistleblower Act.

50. As a result of LaRabida's violations, Griffin-Thomas was harmed, financially and emotionally.

WHEREFORE, Plaintiff, Kia Griffin-Thomas, requests that Defendant, La Rabida, be found liable for violating the Illinois Whistleblower Act and that she be awarded all damages to which she is entitled, including but not limited to backpay with interest; front pay; damages for emotional distress; attorney's fees; expert witness fees; and costs incurred in litigation.

### Count 5: Retaliatory Discharge

51. Plaintiff realleges paragraphs 1-20 as if re-printed here.

52. Griffin-Thomas was discharged by La Rabida.

53. Griffin-Thomas was discharged by La Rabida because she refused to come to work with symptoms of acute respiratory disease in May 2020.

54. City of Chicago's Commissioner of Public Health had signed an order which forbade her from coming to work with these symptoms.

55. A termination for this reason violated the public policy of Illinois.

56. As a result of La Rabida's violations, Griffin-Thomas was harmed, financially and emotionally.

57. Punitive damages are necessary to punish La Rabida for its violations of Illinois law.

58. Punitive damages are necessary to deter La Rabida and similar employers from committing similar violations of Illinois law.

WHEREFORE, Plaintiff, Kia Griffin-Thomas, requests that Defendant, La Rabida, be found liable for the Illinois tort of Retaliatory Discharge and that she be awarded all damages to which she is entitled, including but not limited to backpay with interest; front pay; damages for emotional distress; punitive damages; and costs incurred in litigation.

### Jury Demand

Plaintiff demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

DATED: 4/15/21                                             Respectfully submitted by:

s/Julie Herrera

Law Office of Julie O. Herrera
53 W. Jackson, Suite 1615
Chicago, IL 60604
Tel: 312-479-3014
jherrera@julieherreralaw.com