## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| KIA GRIFFIN-THOMAS, | ) | |
| | ) | Case No. 21-cv-02033 |
| Plaintiff, | ) | |
| | ) | Judge Sharon Johnson Coleman |
| v. | ) | |
| | ) | |
| LA RABIDA CHILDREN'S HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Kia Griffin-Thomas brings this action against her former employer La Rabida Children's Hospital ("La Rabida") for violations of the Family and Medical Leave Act of 1993 ("FMLA") (Count I), the Americans with Disabilities Act of 1990 ("ADA") (Count II), the Illinois Human Rights Act ("IHRA") (Count III), and the Illinois Whistleblower Act ("IWA") (Count IV). Griffin-Thomas also asserts a claim for retaliatory discharge, an Illinois tort (Count V). La Rabida moves to dismiss Counts II-V pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, La Rabida's partial motion to dismiss [10] is granted in part without prejudice and denied in part.

**Background**

The following facts are taken as true for the purpose of ruling on this motion. Plaintiff Kia Griffin-Thomas was employed by La Rabida, a pediatric specialty hospital located in Chicago, Illinois, from September 16, 2013 to May 12, 2020.

In March of 2020, the Commissioner of Health of the City of Chicago issued a shelter-in-place order in response to the COVID-19 pandemic. The order, which was entitled, "Order of the Commissioner of Health of the City of Chicago No. 2020-1[1] ("Order No. 2020-1"), provided that

---

[1] The text of the order is available at https://www.chicago.gov/content/dam/city/depts/cdph/HealthProtectionand

anyone with symptoms of acute respiratory disease, such as fever, cough, shortness of breath, congestion, sore throat, body aches, and fatigue, should not go into their workplace until symptom-free for at least 72 hours.

In mid-April 2020, Griffin-Thomas notified La Rabida that she was experiencing a fever and body aches. On April 22, 2020, Griffin-Thomas informed an assistant in the company's Risk Management Department that, in addition to her fever and body aches, she was experiencing lower back, shoulder, and thigh pain, nausea, a sore throat, a cough, and chest tightness. The assistant, who was also a registered nurse, told Griffin-Thomas to stay away from work until she was symptom-free for three days. The next day, Griffin-Thomas informed the company's Risk Manager and the director of her department that her doctor believed she (and her children) had contracted COVID-19. Griffin-Thomas applied for FMLA leave that day. She notified La Rabida about her FMLA application on April 27, 2020.

On May 5, 2020, while Griffin-Thomas waited to hear back about the outcome of her FMLA request, La Rabida's Employment Manager, Tim Meline, called and emailed her seeking an update on her condition. Griffin-Thomas responded twice that day, explaining that her physician had provided documentation related to her FMLA request, that a decision regarding that request might be reached soon, and that she still had a sore throat and could not "return to work unwell." (Dkt. 1, Compl. ¶¶ 15–16.) Griffin-Thomas added, "If the time I need to fully recuperate from this horrible virus is unconducive to La Rabida's expectations or personal timeline I can submit a formal resignation letter." (*Id.* at ¶ 16.)[2] Six days later, on May 11, 2020, La Rabida's Director of Human Resources, Frances Lefkow, emailed Griffin-Thomas requesting that she call her. Griffin-Thomas

---

Response/Order%20re%20Shelter%20in%20Place%20FINAL.pdf.

[2] In her Complaint, Griffin-Thomas includes excerpts from the emails she exchanged with La Rabida employees. La Rabida attached the referenced emails to its motion to dismiss. The Court may consider the contents of the emails exchanged between Griffin-Thomas and La Rabida employees, because the emails are central to the complaint and referred to in it. *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir. 2017).

responded that day, explaining that her throat was still raw, her chest was still tight, her asthma had flared, and she was "physically unable to return to work." (*Id.* at ¶ 18.) A few minutes later, Griffin-Thomas also emailed Meline relaying substantially the same information regarding her symptoms. Griffin-Thomas also stated that she would "not be physically able to return on 5/12." (*Id.* at ¶ 19.) The next day, Lefkow emailed Griffin-Thomas: "in your email to Tim [Meline], you announced that you would be happy to submit a letter of resignation and I want to inform you that we accept it. Your last day of being active on our payroll will be 5/11/2020." (*Id.* at ¶ 20.)

Griffin-Thomas filed a charge with the EEOC on July 29, 2020, which was cross-filed with the Illinois Department of Human Rights. She received a right-to-sue letter on January 30, 2021 and brought this timely lawsuit on April 15, 2021. Griffin-Thomas claims that La Rabida: (1) violated the ADA and IHRA by denying her the reasonable accommodation of a short leave of absence and terminating her employment because of her disability of COVID-19 infection and asthma (Counts II & III); and (2) violated the IWA and retaliated against her by terminating her employment after she refused to come into work while sick with symptoms of acute respiratory disease (Counts IV & V). La Rabida moves to dismiss each of these claims. It does not move to dismiss Griffin-Thomas's FMLA claim (Count I).

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam). To survive a motion to dismiss, a plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially

plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

**Discussion**

Defendant La Rabida moves to dismiss Griffin-Thomas's disability discrimination and failure-to-accommodate claims under the ADA and IHRA, as well as her claims under the IWA and for retaliatory discharge. The Court addresses each in turn.

*Disability Discrimination and Failure-to-Accommodate*

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability," and the failure to reasonably accommodate a disability is one type of discrimination under the act. 42 U.S.C. § 12112(a), (b). To state a disability discrimination claim under the ADA, a plaintiff must allege that: (1) she was disabled within the meaning of the ADA; (2) she was qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *Sandefur v. Dart*, 979 F.3d 1145, 1151 (7th Cir. 2020). To state a failure-to-accommodate claim, a plaintiff must allege that: (1) she was a qualified individual with a disability; (2) her employer was aware of her disability; and (3) the employer failed to reasonably accommodate her disability. *Youngman v. Peoria Cnty.*, 947 F.3d 1037, 1042 (7th Cir. 2020). Courts analyze IHRA claims under the same framework as the ADA. *Winkelman v. Cont'l Nursing & Rehab. Ctr., LLC*, No. 20 CV 2480, 2020 WL 5763813, at *4 n.8 (N.D. Ill. Sept. 28, 2020) (Shah, J.) (citing *Teruggi v. CIT Grp./Cap. Fin., Inc.*, 709 F.3d 654, 659 (7th Cir. 2013)).

La Rabida claims that Griffin-Thomas has failed to sufficiently allege that she was a qualified individual, and thus her ADA and IHRA claims fail. A "qualified individual" with a disability is a person who can (1) satisfy the requisite skill, experience, education, and other job-related

4

requirements of the position; and (2) perform the essential functions of the position, with or without reasonable accommodation. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m). La Rabida contends that Griffin-Thomas was not a qualified individual who could perform the essential functions of her job with or without reasonable accommodation, because she generally pleaded that she was "physically unable to return to work" without specifying the amount of time she needed to return. (Dkt. 11 at 6.; Dkt. 19 at 2–3.) La Rabida also argues on reply that it was not obligated to provide Griffin-Thomas "an indefinite leave of absence or wait indefinitely for Plaintiff to recover from her medical issues." (Dkt. 19 at 3.)

The Seventh Circuit has recognized that a short medical leave may be a reasonable accommodation in certain cases. *See Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017) ("a brief period of leave to deal with a medical condition could be a reasonable accommodation in some circumstances") (citing *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003)). The reasonableness of an accommodation is a "highly fact-specific inquiry." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 967–68 (7th Cir. 2020) (citation omitted); *see also Clark v. Evergreen Living & Rehab Ctr., LLC*, No. 20 C 6596, 2021 WL 2915131, at *5 (N.D. Ill. July 12, 2021) (Finnegan, J.) ("At the pleadings stage of these proceedings, the Court is not persuaded that the medical leave form requesting four to six weeks of time off renders Plaintiff not qualified under the ADA as a matter of law.").

Drawing all reasonable inferences in Griffin-Thomas's favor, the Court cannot conclude that the medical leave Griffin-Thomas allegedly sought prohibits her from proving she was qualified under the ADA and IHRA. Griffin-Thomas alleges that, beginning in mid-April 2020, she "sought [a] reasonable accommodation in the form of a short amount of time off work." (Dkt. 1, Compl. ¶ 34.) While neither the Complaint nor the emails attached to La Rabida's motion specifies when Griffin-Thomas would have been able to physically return to work, they also do not foreclose the

possibility that she could have returned within days of her email to Lefkow on May 11, 2020. *See,*
*e.g., Bunch v. Cnty. of Lake*, No. 15 C 6603, 2016 WL 1011513, at *4 (N.D. Ill. Mar. 14, 2016) (Ellis, J.)
(although plaintiff "may have a tough road in proving his claim," the court denied defendants'
motion to dismiss his ADA claim where the plaintiff's return date was uncertain because the court
could not "preclude him from attempting to prove that, in fact, he could have returned to work
within a definite period, such as after an additional one month's leave") (quoting *Cross v. Golden*
*Living Ctr.-Silver Spring*, No. 14 C 1563, 2015 WL 3887161, at *2 (E.D. Wis. June 24, 2015)). At that
point, Griffin-Thomas had been on leave for less than three weeks since a La Rabida employee
instructed her to stay home until symptom-free for three days. Without additional facts, the Court
cannot conclude that Griffin-Thomas required "an indefinite leave of absence," as La Rabida
suggests, or that she was unable to work with or without reasonable accommodation for a "multi-
month" period such that Griffin-Thomas could not be a "qualified individual" under the ADA.
*Clark*, 2021 WL 2915131, at *6; *Severson*, 872 F.3d at 479 ("A multimonth leave of absence is beyond
the scope of a reasonable accommodation under the ADA.").

La Rabida also argues that Griffin-Thomas's "conclusory allegations" that she was
"qualified" and "could do the essential functions of her position, with accommodation" contradict
her concession that she could not return to work. (Dkt. 11 at 6.) "Because disability, unlike race,
can often be a legitimate consideration in employment decisions, a complaint alleging discrimination
under the ADA must plead with adequate specificity that the plaintiff is qualified to perform the
essential functions of the job with or without reasonable accommodation." *Mack v. Chi. Transit*
*Auth.*, No. 17 C 6908, 2020 WL 3414952, at *3 (N.D. Ill. June 22, 2020) (Tharp, J.) (citation
omitted). "[I]n the ADA context, simply pleading that one is a qualified individual with a disability is
'precisely the type of conclusory, formulaic assertion that was disapproved of by *Twombly*.'" *Id.*
(citation omitted).

Griffin-Thomas alleges that "[s]he was 'qualified': she could do the essential functions of her position, with accommodation." (Dkt. 1, Compl. ¶ 33.) But she offers no facts regarding her ability to perform the essential functions of her position with (or without) accommodation. Indeed, she does not even identify her position, let alone its essential functions (nor does either party inform the Court in the briefing what Griffin-Thomas's job actually was). The Complaint thus fails to adequately allege that Griffin-Thomas was qualified to perform the essential functions of her job with or without a reasonable accommodation.

*Retaliation Under the Illinois Whistleblower Act*

Section 20 of the IWA states that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 ILCS 174/20. In her Complaint, Griffin-Thomas alleges that La Rabida violated the IWA when it fired her for refusing to come into work while she was sick with symptoms of acute respiratory disease, in violation of Order No. 2020-1.

La Rabida claims that an alleged violation of a municipal ordinance does not constitute a violation of a "state or federal law, rule, or regulation" as required under the IWA. (Dkt. 11 at 6–7, citing 740 ILCS 174/20.) Griffin-Thomas argues in her response that Order No. 2020-1 was effectively a state law, rule, or regulation because the ordinance was issued pursuant to authority granted in a state regulation. Griffin-Thomas also claims that Order No. 2020-1 both aligned with the Illinois Department of Public Health's COVID-19 guidance and operated as an expansion of the social distancing requirements set out in Governor Pritzker's Executive Order 2020-32, which ordered businesses to follow the guidance of local public health departments and ordered Chicago residents demonstrating COVID-19 symptoms to stay home. (Dkt. 15 at 8–9.) In other words, Griffin-Thomas claims that by refusing to go into work with COVID-19 symptoms, she refused to participate in an activity that would have resulted in a violation of a state law.

The Court need not consider Executive Order 2020-32 or IDPH guidance, however, as the Court finds that Griffin-Thomas has sufficiently pleaded a retaliation claim under the IWA with respect to Order No. 2020-1. Two recent decisions in this district are instructive. The first is a case on which La Rabida relies, *Milsap v. City of Chicago*, No. 16-cv-4202, 2019 WL 4749971 (N.D. Ill. Sept. 30, 2019) (Blakey, J.). The second is *Brown v. Biomat USA, Inc.*, No. 20-cv-5437, 2021 WL 3187599 (N.D. Ill. July 28, 2021) (Rowland, J.). While neither is on all fours with the facts in the instant case, both provide guideposts for the Court's decision.

In *Milsap*, the plaintiff, a former employee of the City of Chicago's Department of Streets and Sanitation, claimed that the City violated Section 15(b) of the IWA when it fired him in retaliation for disclosing a violation of section 2-156-005 of the City's municipal code. The plaintiff's IWA claims were "predicated solely" on his disclosure of a violation of that section of the city's governmental ethics ordinance, which prohibited city employees from giving individual preferential treatment and required them to disclose waste, fraud, abuse, and corruption. 2019 WL 4749971, at *5. As La Rabida points out, the plaintiff in *Milsap* did not offer any authority suggesting that "the IWA is broad enough to cover a claim based solely upon an alleged ordinance violation." *Id.* at 6. The *Milsap* court granted summary judgment for the defendant.

In *Brown*, the court had to determine whether a state executive order fell under the statutory language of protected activity based on a "state or federal law, rule, or regulation." 2021 WL 3187599 at *2–3. Though the court noted that the IWA's definition section does not define the terms "law," "rule," or "regulation," it reasoned that executive orders are "rules" in the ordinary sense of the word—"they are edicts that citizens must obey." *Id.* at 3 (citing 740 ILCS 174/5). The court further reasoned that construing the terms narrowly or formalistically would be inconsistent with the section of the IWA at issue in that case, which provided that employees need only have "*reasonable cause to believe* that the information discloses a violation of a State or federal law, rule, or

regulation." *Id.* (citing 740 ILCS 174/15(b)). The court held that executive orders are "rules" within the meaning of the IWA and denied the defendant's motion to dismiss.

This case is closer to *Brown* than *Milsap*. Although it is a city ordinance at issue in this case, the language of Order No. 2020-1 and its interplay with an Illinois regulation distinguishes it from the ethics ordinance at issue in *Milsap*. Order No. 2020-1, to which Griffin-Thomas linked in its entirety in the Complaint, states that it includes the authority granted in 77 Illinois Administrative Code 690.1310(c). That Illinois regulation states in relevant part:

> [T]he Department has the general authority **to delegate to a certified local health department, for the purpose of local administration and enforcement**, the duties that the Department is authorized to enforce. Due to the need for immediate action to respond to a threat of a dangerously contagious or infectious disease, the ***Department delegates its powers to issue orders for isolation, quarantine or closure***; physical examinations and tests; collection of specimens; administration of vaccines, medications and treatments; and observation and monitoring and to issue and enforce orders to certified local health departments within the State of Illinois.

*Id.* (emphasis added).

The ordinance at issue in the instant case—including its seeming double duty as the delegee and enforcement arm of a state regulation—is distinct from the ordinance in *Milsap* (which was decided on summary judgment). At the pleadings stage, Griffin-Thomas has plausibly alleged a claim for retaliation under the IWA.

*Retaliatory Discharge*

To state a claim for retaliatory discharge, a plaintiff must allege that "(1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) the discharge violates a clear mandate of public policy." *Walker v. Ingersoll Cutting Tool Co.*, 915 F.3d 1154, 1157 (7th Cir. 2019) (quoting *Turner v. Mem'l Med. Ctr.*, 233 Ill. 2d 494, 500, 331 Ill. Dec. 548, 553, 911 N.E.2d 369, 374 (2009)). La Rabida contests the first and third elements.

First, La Rabida contends that Griffin-Thomas cannot state a claim for retaliatory discharge because she voluntarily resigned from her position. More specifically, La Rabida claims that Griffin-Thomas "volunteered that she was willing to submit a formal resignation letter, and La Rabida accepted that offer." (Dkt. 11 at 8.) Griffin-Thomas, however, alleges that she was discharged by La Rabida. Drawing all reasonable inferences in Griffin-Thomas's favor, the Court declines to conclude that Griffin-Thomas's statement to Meline that she *could* submit a formal resignation letter if the time she needed to fully recuperate was "unconducive to La Rabida's expectations or personal timeline" constituted a resignation. Griffin-Thomas's pleading sufficiently raises an issue of fact, the determination of which is premature at the motion to dismiss stage.[3]

Second, La Rabida argues that even if it discharged Griffin-Thomas, she has not sufficiently alleged that such a discharge violated a clearly mandated public policy. Griffin-Thomas pleads that Order No. 2020-1 forbade her from coming into work with COVID-19 symptoms, and her subsequent termination for complying with the order violated the public policy of Illinois.

*Brown* again is instructive here. In *Brown*, the court discussed the Illinois Supreme Court's decision in *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 421 N.E.2d 876 (1981). The *Palmateer* court noted that "public policy" does not have a precise definition but stated that it "concerns what is right and just and what affects the citizens of the State collectively." *Id.* at 130, 421 N.E.2d at 878. "[A] matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort [of retaliatory discharge] will be allowed." *Id.* at 130, 421 N.E.2d at 878–79. Additionally, the Illinois Supreme Court stated that public policy favors citizens ferreting out crime despite the lack of a specific constitutional or statutory provision requiring it. *Id.* at 132, 421 N.E.2d at 880.

---

[3] As explained above, the Court is required to draw all reasonable inferences in plaintiff's favor, and therefore does not conclude that Griffin-Thomas's statement was necessarily a resignation, although such "threats" are not advisable.

*Brown* likened such a holding to that of a state's citizens upholding COVID-19 protocols. 2021 WL 3187599, at *4. The court stated, "Although no specific constitutional or statutory provision requires citizens to uphold the state's COVID-19 safety protocols, it is difficult to imagine rules that strike more directly at the heart of a citizen's social rights, duties, and responsibilities." *Id.* (quotations omitted). In *Brown*, the violations concerned a "very specific Executive Order" that evinced clearly articulated public policy concerns. *Id.* Here, Order No. 2020-1 is likewise specific, and it is replete with public policy concerns surrounding COVID-19 as well (*e.g.*, "protect[ing] the health, safety, and welfare of the City's residents"). Assuming La Rabida discharged Griffin-Thomas as alleged, she has plausibly claimed that it violated a clearly mandated public policy.

**Conclusion**

Based on the foregoing discussion, La Rabida's Partial Motion to Dismiss [10] is granted in part and denied in part. Griffin-Thomas's ADA and IHRA claims (Counts II and III) are dismissed without prejudice and with leave to replead. La Rabida's motion to dismiss is denied with respect to Griffin-Thomas's claims under the IWA (Count IV) and for retaliatory discharge (Count V). By February 1, 2022, Griffin-Thomas may file an amended complaint to cure the deficiencies described in this opinion. The portion of La Rabida's motion that seeks an extension of time to answer the remaining claims in the Complaint [10] is stricken as moot.

IT IS SO ORDERED.

Date: 01/11/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge